**ZIM ISRAEL NAVIGATION CO., Ltd.,**
**Cross-Libellant,**

v.

**T. CHATANI & CO., Ltd., Reliance Merchandise Co., Inc., and Metropolitan Industries, Inc., Cross-Respondents.**

United States District Court
S. D. New York.

Jan. 17, 1966.

Hill, Rivkins, Louis & Warburton, New York City, for cross-respondents; Thomas P. Pender and Thomas D. Toy, New York City, of counsel.

Hill, Betts, Yamaoka, Freehill & Longcope, New York City, for cross-libellant; Donald B. Allen, New York City, of counsel.

HERLANDS, District Judge:

The cross-respondents have moved for a summary judgment dismissing the cross-libel, pursuant to Supreme Court Admiralty Rule 58, the counterpart of Fed.R.Civ.P. 56. Reliance Merchandise Co., Inc. (hereinafter "Reliance") and Metropolitan Industries, Inc. (hereinafter "Metropolitan") seek a complete dismissal of the cross-libel as to them. T. Chatani & Co., Ltd. (hereinafter "Chatani") seeks to dismiss the cross-libel "in part" as to it, so as to reduce the damages claimed against it in the cross-libel to $75.

The motion is supported by the affidavit (and the exhibits annexed thereto) of Thomas P. Pender, Esq., one of the cross-respondents' proctors. Since the motion is grounded upon the Pender affidavit and its exhibits, an analysis of its asseverations is necessary. That affidavit asserts:

(1) the original libel (64 Adm. 195) was filed on February 28, 1964 by Chatani, Reliance and Metropolitan against Zim Israel Navigation Co., Ltd. (hereinafter "Zim") and its vessel, S.S. TEVERYA, "for non-delivery and damage to

a shipment of general merchandise" carried by Zim's vessel from Kobe, Japan, to New York under a bill of lading (No. K–NY–63) dated November 24, 1961;

(2) Zim's cross-libel was filed on July 8, 1964 (Exh. "A" annexed to the Pender affidavit);

(3) the cross-libel alleges that Zim is an Israel corporation; that Chatani, a foreign corporation, has a place of business in Japan; that Reliance, a corporation of an unspecified state of this country, has a place of business in Chicago; that Metropolitan, a corporation of an unspecified state of this county, has a place of business in Chicago; that, since January, 1961, Zim has operated a liner service between Japan and the United States under the name of Pacific Star Line, under a published system of freight charges, depending upon the nature of the goods; that "From time to time during the operation of this service, and specifically on the voyage referred to in the companion libel to this pleading, cross-respondents knowingly and fraudulently misrepresented the contents of packages and containers shipped on said Line in order to obtain lower freight charges" (paragraph "Sixth"); and that "As a result of the aforementioned misrepresentation" Zim was deprived of properly earned revenue in the approximate amount of $10,000 (paragraph "Seventh");

(4) "the cross-libel alleged matters and causes of action which did not arise out of the subject-matter of the original libel";

(5) the verified answer of the cross-respondents, "upon information and belief," denies each and every allegation contained in paragraphs "Sixth" and "Seventh" of the cross-libel; pleads (in behalf of the three cross-respondents) as a "separate and partial defense" that the cross-libel sets forth "a cause or causes of action dependent upon transactions not included in the original libel filed herein, which are not proper subjects of a cross-libel" (paragraph "Tenth"); and pleads (in behalf of the two cross-re-spondents, Reliance and Metropolitan) as a "separate and complete defense" that Reliance and Metropolitan "are not proper parties to the Cross-Libel" (paragraph "Twelfth");

(6) the verification of the cross-respondents' answer to the cross-libel is by Mr. Pender, who alleges that the sources of his information and the grounds for his belief are "documents and records in his files";

(7) Zim's proctors, under date of June 17, 1964, sent a letter (Exh. "C") to the proctors of the cross-respondents stating, in part, that they intended to "counterclaim for extensive damages due to deliberate misrepresentation of shipments"; that "the bill of lading describes the cargo as 'baskets' and 'toys', whereas it actually consisted of batteries and shaving mirrors. The loss of revenue to the carrier from this deliberate misdescription alone is $75, and we suspect that an investigation of similar shipments involving the same parties would uncover a great deal more of the same";

(8) the cause of action set forth in the cross-libel is "for additional freight due and owing by reason of the alleged fraudulent misrepresentation to it by the shipper of the character and content of many differed and undefined shipments, including the one which is the subject of the libel herein"; ·

(9) Reliance and Metropolitan "were merely the notify parties" and Reliance was "the ultimate receiver" with respect to "the subject shipment";

(10) Reliance and Metropolitan "were in no position to make fraudulent misrepresentation to Zim, and were not parties to the transactions between Zim and Chatani";

(11) Zim's cross-libel against Chatani is limited, by operation of law, "to freight allegedly due and owing on the shipment of November 24, 1961, only" the maximum of which, according to Zim, is $75.

The motion is opposed by the affidavit of Donald B. Allen, Esq., one of Zim's proctors, which asserts:

(1) the original libel is on behalf of "the shipper, consignee, and owner of the cargo, which was allegedly damaged in 1961";

(2) "When claim was presented, it was found that the goods which consisted of batteries and shaving mirrors had been deliberately misdescribed as 'baskets and toys' to obtain a lower freight rate; * * * and the claim was declined";

(3) " * * * a cross-libel was filed to recover for additional unpaid freight on the basis of the carrier's [Zim's] experience and belief that this was not an isolated instance but a continuing practice. Specific details of underpayment have been promised as soon as libellants identify their shipments and produce the covering invoices * * *";

(4) concerning the statement in the Pender affidavit that Reliance and Metropolitan "were in no position to make fraudulent misrepresentation to Zim, and were not parties to the transactions between Zim and Chatani":—"This is a very strange statement regarding two parties originally named and still maintained as libellants. Furthermore, there is not one single bit of evidence, not even an affidavit, from the parties themselves to support this conclusion";

(5) concerning the impermissibility in admiralty of pleading a cross-libel filed upon a counterclaim not arising out of the same transaction, occurrence, contract or cause of action that is the subject matter of the original libel:—the cross-libel and the libel "both deal with ocean shipments concerning the same parties" (p. 3).

Neither the Pender moving affidavit nor the Allen opposing affidavit meets the prerequisites of Supreme Court Admiralty Rule 58(e). Neither affidavit is made "on personal knowledge" nor sets forth "such facts as would be admissible in evidence" nor shows "affirmatively that the affiant is competent to testify to the matters stated therein." [1]

This insufficiency is compounded by the fact that no one having personal knowledge has clearly stated the facts defining the exact relationship between the libellants (cross-respondents) *inter se* or between each of them and Zim.

Furthermore, the cross-libel (paragraph "Sixth") speaks of Zim's "service" between Japan and the United States under the name of Pacific Star Line and then alleges that "From time to time during the operation of this service" the "cross-respondents knowingly and fraudulently misrepresented the contents of packages and containers shipped on said Line in order to obtain lower freight charges." This charge is levelled against all three cross-respondents (libellants) and the charge apparently relates to a number of different voyages or shipments; in addition to the voyage or shipment of November 24, 1961,—for all of which "misrepresentation" Zim seeks to recover $10,000, the total amount of earned but unpaid revenue. The amount of earned but unpaid revenue on the voyage of November 24, 1961 was only $75.00, according to the June 17, 1964 letter of Zim's proctors. That letter refers to the suspicions of Zim's proctors "that an investigation of *similar shipments* involving *the same parties* would uncover a great deal more of the same" kind of deliberate misdescription of cargo (emphasis supplied). What these "similar shipments" are, when they occurred, and how "the same parties" are involved in them are questions completely unanswered in the affidavits.

Upon the oral argument of the 'motion, Zim's proctor, Mr. Allen, stated that Zim was claiming that fraudulent misrepresentations as to the character of the cargo had been made on an unspecified number of shipments *other than* and in addition to the shipment of November 24, 1961; and that Chatani was

---

1. This observation does not apply to Exhibit "C" attached to the Pender affidavit, an undisputed copy of a letter sent by Zim's proctors to the cross-respondents' proctors.

the shipper in each of those instances. The connection, if any, of Reliance and Metropolitan to those other shipments or to the alleged related misrepresentations was not described. However, the entire argument by both counsel was centered upon the legal issue whether Zim could cross-libel for freights "on other shipments."

In its post-argument memorandum (pp. 1–2), Zim frames the issue by describing the cross-libel as against "the *same* parties for freights on *other* shipments wherein it [the cross-libellant] has been defrauded by the *same* libellants." (Emphasis supplied.) And elsewhere in that memorandum (pp. 3–4), Zim states that the cross-libel "concerns ocean shipments exactly like the one in the libel and the fraud * * * in the other shipments will be highly persuasive in proving actual intent." It is to be noted that Zim reasserts the fraud charge against the three libellants (cross-respondents).

There may be an implied charge here, as in the unclear Allen affidavit, that the three libellants (cross-respondents) systematically defrauded Zim in the same way in a number of shipments (including the shipment of November 24, 1961) and that the cross-respondents were actually engaged in a conspiracy to defraud Zim out of freight charges by misdescribing their cargoes. On the other hand, it may be that each alleged fraud was separate and independent (substantive offenses) and not in pursuance of an over-all conspiracy.

If arguendo the cross-libel is deemed to embody a conspiracy charge that encompasses all shipments by the libellants and if the original libel is based on a cargo claim arising out of a single shipment, it may be that that single shipment was an overt act in pursuance of the general conspiracy pleaded in the cross-libel. On that supposition, there would be a close nexus between the transaction pleaded in the libel and the transactions pleaded in the cross-libel. The point, however, has not been suggested by the cross-libellant.

In fact, the term "conspiracy" has not been employed in the cross-libellant's pleading, affidavit, memorandum or argument.[2] Furthermore, Zim's proctor— expressly alluding to the distinction between compulsory and permissive counterclaims under the Federal Rules of Civil Procedure, Rule 13(a), (b)— squarely takes the position (Post-argument Memorandum, pp. 3–4) "that the proper procedure is to consult the Federal Rules of Civil Procedure for guidance"; and "that permitting or denying the cross-libel is discretionary with the Court, and that the equities in the present situation heavily favor its retention." The cross-libellant's position thus plainly recognizes that the counterclaim set forth in the cross-libel does not arise out of the transaction or occurrence that is the subject matter of the claim pleaded in the libel.

With the pivotal issue thus defined, we turn to a consideration of the controlling legal authorities.

■ While a court sitting in admiralty may sometimes look to the Federal Rules of Civil Procedure for interpretative analogies, a civil rule is manifestly inapplicable to maritime proceedings, especially in face of a contrary established admiralty mode of pleading precisely in point.

■ Cross-libels are not covered by a specific Supreme Court Admiralty Rule that corresponds to rule 13 of the Federal Rules of Civil Procedure.[3] The decisions,

2. If the facts showed "conspiracy", the absence of the label would be insignificant.

3. Supreme Court Admiralty Rule 50 deals only with security on a cross-libel. Admiralty Rules For The Southern And Eastern Districts Of New York, Rule 16, Recoupment and Cross-Libel, provides:

"If a respondent or claimant shall desire to recoup or set off any damages sustained by him growing out of the transactions referred to in the libel, he must in his answer state the facts and his own damages in like manner as upon filing a cross-libel, * * *. He shall not, however, be entitled to any affirma-

however, have established the principle that a cross-libel can be filed only when it arises out of the same contract or cause of action for which the original libel was filed. See, e. g., United States v. Isthmian Steamship Co., 359 U.S. 314, 320–322, 79 S.Ct. 857, 3 L.Ed.2d 845 (1959); Solomon v. Bruchhausen, 305 F.2d 941, 943 (2d Cir. 1962), cert. denied sub. nom. Isbrandtsen Co. v. Maximo, 371 U.S. 951, 83 S.Ct. 506, 9 L.Ed.2d 499 (1963). See 2 Benedict, American Admiralty (6th ed. 1940) § 329, at 453–54 n. 6 and 1965 Supp. at 35 n. 6.

In United States v. Isthmian Steamship Co., supra, 359 U.S. at 323, 79 S.Ct. at 862, Chief Justice Warren for a unanimous court declared, in answering the argument that the "more flexible procedure" concerning counterclaims in civil cases under F.R.C.P. rule 13(b) should be adopted in lieu of the anachronistic admiralty rule:

"We think that if the law is to change it should be by rulemaking or legislation and not by decision." [4]

Judged by these authorities, the cross-libel herein is improper and should be, and hereby is, dismissed in its entirety as to Reliance and Metropolitan and dismissed as to Chatani to the extent that it alleges a claim or claims not arising out of the same contract or cause of action for which the original libel was filed.

Settle order on notice.

tive recovery upon such answer. *In any case where a cross-libel in personam will lie,* service of such cross-libel may be made on the proctors for the libellant." (Emphasis supplied.) Rule 16 does not define the cases where a cross-libel will lie.

4. Preliminary Draft Of Proposed Amendments To Rules Of Civil Procedure For The United States District Courts, Part I—Amendments To Effect Unification Of Civil And Admiralty Procedure (March 1964), Appendix I, p. 11, Rule 1. Scope of Rules, would make F.R.C.P. rule 13 applicable to admiralty cases, for it provides:

"These rules [the Federal Rules of Civil Procedure] govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity *or in admiralty,* with the exceptions stated in Rule 81. * * *" (Emphasis supplied.)

This court strongly endorses the proposed amendment.